I'm not as intimately familiar with what happened below because we enrolled after the case was appealed, so we are similarly situated in court in some ways and looking at a record. So the argument, it seems to me, unless the court wants to start otherwise, is the first question of whether or not the issue of the death sentence litigation ending sanction is appropriate for this court to consider because that is one of the issues that the appellees challenge. Whether or not that's appropriate because it was not first partially, I think, because it was not first raised below and secondarily because there's a question, at least for the appellees, about whether there was in fact a litigation ending sanction. This procedure, these proceedings happened very rapidly in the scheme of the life of this litigation, which started in 2000, so, I'm sorry, excuse me, December of 2019. So, by the time that this came around, it had been set for trial several times and continued several times due to, I think, the court would well imagine that COVID and the hurricanes in Lake Charles interfered with that to a degree. And there were also other problems that my clients detailed in their depositions, in their responses to discovery, and in affidavits that testified and verified their difficulties with trying to obtain the information that they believed supported their case. And also they were able to eventually identify some things that supported their case. So, the question of whether or not this is something that should have been briefed in the fashion of when opposing the motion in limine, because that's the context that this first came up, was a motion in limine that was to exclude all evidence of damages and secondarily a motion for summary judgment that was filed on the same date. So, that is the context and that was filed after the discovery deadline had passed and the reason for the motion to exclude all evidence of damages was because of that. And I think it's important that the district judge underscored that in his memorandum ruling because he says that the reason why he granted the motion to exclude all damages evidence is because the plaintiffs, the discovery deadline had passed and the plaintiffs had not provided sufficient evidence of damages throughout discovery. So, that means I believe in plain terms that before discovery there was not enough evidence and that also I believe means based upon the record of the court that there was no consideration given to the efforts on the part of my clients to try to present evidence. It was late. There's no question. It was after the deadline, but they had testified before the deadline under oath about their difficulties doing that. So, one of the questions in my mind is on appeal, well, is this something that a rule 56D affidavit or declaration should have been filed? There was no formal declaration like that filed, but the affidavit, particularly of Ms. Hansen, went through in substantial detail the reasons why they were continuing to have these difficulties. And I think most importantly for the purposes of whether this is a litigation ending sanction is that the motion, the hearing is September 2nd of 22. The order granting was made verbally during the hearing and then the judgment was September 6th and then the judge, Judge Doty, during the hearing itself announced that he believed some of the claims were going to be dismissed because of the summary judgment. It took another 10 days after the issuance of the order granting the motion eliminated to grant the memorandum ruling granted in the summary judgment. Counsel, normally you have to consider lesser sanctions before you impose so-called death penalty sanctions and eliminating all damage claims for several items in this case would be death penalty sanctions if you can't put on evidence that you've been damaged. The district court, was the district court influenced by the district court's belief that the claims were time barred? Well, that's what the court did say that and I think that's an inflation of the evidentiary side. To me, the prescription aspect puts the cart before the horse in the sense that the court used the denial of the damages evidence as a substantial basis for dismissing counts 3, 4, 5, and 6. And also it's referenced in count 2 and I believe in the mootness or section of the opinion. It's also, damages are also referenced as a factor. So the first count was the declaratory judgment aspect of the case, which was not per se damages, but it related to the rest of the case because the declaratory judgment related to the relief that was being sought for damages as well was one of the reasons for that. But your honor, I think that was the consideration here because the problem with the death penalty sanction here is that was there any bad faith? The court didn't make a finding on that. So at the very least, would we need to remand for the court to make a determination that there was bad faith? I think yes, that would be one path, of course, to take because there are more questions about that on the biggest factors was who is to blame here? Was it the client and the counsel? I mean, I wasn't the counsel below. I can only say that there were a lot of things, had I been trial counsel, I would have done differently and I'll leave it at that. And we had a lawyer licensed in Florida who was admitted pro hoc vitae in Louisiana by a Lake Charles lawyer who a month, two months, three months ago was put on an active status by the Louisiana Supreme Court for disability and who, as my understanding, wasn't involved in the case. This is from my client. I had very little involvement with the case. You had a Florida lawyer trying to come to Louisiana, usually not a good idea, to try a case or to prosecute a case. So I think I'd be going to Florida even though I like going there, but that's part of the thing. So Judge Elroy, the answers are, number one, yes, bad faith or willfulness. That question was not answered. In fact, it seems like from the hearing the judge did not believe that that was what was going on. He was instead stringently upholding the deadline and focused on the fact that the discovery had not been completed timely rather than analyzing whether or not there was any kind of bad faith or willfulness. He didn't see this as a death penalty sanction necessarily, did he? I don't even think it came up in that context. But wasn't that your predecessor's responsibility to say, whoa, judge, you have to do the death penalty and you need to do the methodology on that? Hindsight in 2020, of course it was. Should that have been raised? Wait, wait, wait, you're dismissing this case. You've got to give me – it's my fault. My clients didn't have anything to do with this, which is one of the factors. Was that said? No. You're right. Should it have been said? Yes. But it wasn't. And that's what comes before the court about whether this is the type of error that the court should nonetheless address on appeal. Is it plain error? Did it affect substantial rights? Did it cause prejudice? Of course it did. What's your best case that lets us go in without a properly preserved objection in this context? I think it's the Lucas, if I'm pronouncing it right, LaFunder case, I think. Because if the LaFunder case versus Munez, 924, Fed 3rd, 753. And I think it says that the court looked at – it says we have previously treated an order striking a defendant's pleadings as litigation and a sanction. The court's commenting on that. Have all suggested it's either the simultaneous grant of the default or the denial of the motion to reprieve that makes it a litigation and a sanction. Here, the timing of the destruction of the evidence, if you will. You can't have any evidence. You can't present any evidence of damage. Therefore, I'm going to dismiss your case. And not only that, for good measure, I'm going to say that it's prescribed to. And that raises different issues because this case is not just about a trust. I know that as Appellee's Counselor pointed out in her brief, that it was the capacity in which the appellants pled their case was as income beneficiaries and principal beneficiaries. And one of them was a co-trustee. But if you look at the complaints themselves, they all make it crystal clear that we're not just talking about what was done with the trust. We're talking about what was done with money that we inherited from our father that was funneled into the trust. That is not a trust claim. Those allegations are very clearly made in the complaint. And it's specifically set forth in the affidavit that Ms. Hanson filed that was one of the reasons why it was opposed. I think what's compelling about this case was the perfunctory manner in which the judge really just didn't even look at the additional evidence that the appellants tried to submit. I believe it's clear from the judge's transcript and his statements and his memorandum that he just looked at, look, the deadline is here. It's passed. It didn't develop sufficient evidence during discovery. Why? It's too bad. What do you ask this court to do? I would ask this court to reverse the dismissal of the damages, well, the granting of the motion and limiting, Your Honor. And remand that to make a determination about whether or not that's number one. I think you have to do that to get to number two, which is to decide whether there was any good reason for the appellant's inability to develop the evidence. Was there bad faith? Was there willfulness? Was there really something that this was their attorney's fault as opposed to theirs? Or their attorney's negligence? Or some of those factors that we can't put in front of this court because that record was not developed? Granting? That's an odd thing. Reverse the grant of a motion and limiting is, OK. And I think also the court, because there are factual, look at these evidentiary statements that are included in the affidavit that were filed after the fact. It is clear, I believe, that the trial judge was weighing evidence. And he just didn't want to see the evidence. So the easy way not to have to have it go to a jury, and that's the other thing about this case, this is a jury case. It was a jury trial request. And so this judge decided, and I think I'm paraphrasing his language, something along the lines, well, rather than having to wait through a trial and granting a direct verdict, I'm going to do it now. Because I'm going to grant this motion and remand it. And that's just not a good reason for a trial judge to act out of the suit under those circumstances. You can't forecast a result on a directed verdict when you're not even considering the evidence that's before you. And that's the part two of the problem, Judge Elrod, is that just didn't happen. I think the judge's opinion makes it clear that what he's looking at is only the evidence that was developed for discovery. He's not paying any attention to any of the supplemental evidence that the defendants, I mean, sorry, that the appellants, my clients, tried to put in and did put in an explanation. Here's where we think it was wrong. Here's our five- or six-page supplement report where we think things went wrong. So I would ask you to reverse the summary, Judge. Number one. Number two, also vacate the granting of the motion in limine, if necessary, with instructions to the district court to review whether the vicus factors have been met in this circumstance. Your Honor, that is really going to be for Judge Doty to run his docket on how he sees things. I can assure you, I'm sorry, I can assure you that what we'll ask for is the opportunity to complete some of the discovery that my clients were trying to undertake when this came up. Whether Judge Doty allows that is a different question. Pardon? Oh, okay. Is there evidence in the summary judgment right now, though, that would make a fact issue? I believe so. The opposition to the memorandum, because there's two parts to this. There was the opposition to the motion in limine, and there was the opposition to the motion for summary judgment. And there is, in the court's record, at 2065-140 is the submission that was made in response to the motion to exclude all evidence. There is an affidavit that was later filed, which is also in the record at Ms. Hanson's file that's in the record. I can't put my fingers on it. That was filed in opposition to the motion for summary judgment on July 20. There was a separate affidavit where she goes, look, this is what we believe. Look at my supplement. It refers back to the supplemental damages report. It says this is what we have discovered. Here are the damages that we believe that we have sustained and the additional things that we need to explore, and we would like the opportunity to do that. That evidence is all in that affidavit that was filed in the memorandum in opposition to the summary judgment. So, yes, Your Honor, there is evidence that creates a genuine issue of material fact that should have precluded the entry of summary judgment by the district judge. Any more questions? You've saved time for rebuttal, Mr. Edgeron. Thank you. Ms. Gonski? May it please the Court? Katherine Gonski on behalf of the defendants in this matter. Your Honor, I'd like to back up for a minute. My friend on the other side said everything kind of happened fast in this case. This is the third lawsuit that has been filed alleging mismanagement of the Boris King Trust against the defendants. Beginning in 2011, there was a state court suit filed in Lake Charles, Louisiana. That case was dismissed after a bench trial. Then, in 2016, the plaintiffs filed a suit in Texas state court. That lawsuit was dismissed. They agreed that it would be better to proceed in Louisiana, and so here we are. In 2019, this lawsuit was filed in federal court in Lake Charles. And, Your Honor, the court appropriately found here that the plaintiffs couldn't put on evidence of damages when discovery was closed. We had the opportunity to depose all three plaintiffs, and in each deposition, we asked, Trial is coming up. What are your damages? We have not seen a number. You have not complied with your obligations. What are your damages? And we were told time and again, we don't know. We can't give you a number. We're waiting on documents. A month later, discovery closed. The amount of the race in this trust, how much money are we talking about in the trust, the race? So, I'm glad you asked, Your Honor. I'm sorry? I'm glad you asked, Your Honor. We have no, we have no evidence of damages, right? We filed our motion to exclude. All of a sudden, they come up with a number of $37 million that they're claiming to in damages, that they're claiming was somehow mismanaged from the trust that they were entitled to, and they weren't. That is not the value of what's actually within the trust, but that's what they're claiming to. That's what they're claiming that the defendants allegedly diverted from the trust to which they're entitled. So, discovery closes. There's no motions to compel. I'm just trying to get a picture of what this family is fighting about for all these years. I assume there's some money in there somewhere. There is money in there, Your Honor. And every year, the income beneficiaries are paying. How much are we talking about? It's not $200. It's not $200. It varies. And sometimes it was $1 million. At one point, after the Halcyon merger, which was raised in both of our briefs, that number increased to $15 million. The number that's in it today is much less than that. I don't have in front of me exactly what it is, but we're talking, it's a substantial amount of money. But there's no claim that the income beneficiaries weren't paid out every year. That's not what this case is about. This case is about alleged allegations that the defendants have diverted money out of the trust to which the plaintiffs are entitled. Counsel? Yes, ma'am. Whenever the district court said you missed the deadline, no damages, do you disagree that that's a death penalty sanction on the claims that had damages associated with them? I agree with you that that led to the ultimate dismissal of those claims on summary judgment. With respect to those claims, yes, it led to the ultimate dismissal. So should the court have followed the bad faith findings and made all the proper findings before imposing death penalty rather than lesser sanctions, such as your expenses and time and all kinds of other ways that sanctions are often given? No, Judge Elrod. It did not need to, and I'll tell you why. What case says that? First of all, the case of Moore v. Sitka, which Judge Smith actually wrote, that case, I think, really hits the nail on the head here. In that case, you had two sets of plaintiffs. You had a set of plaintiffs who, as a discovery sanction, those claims were dismissed outright. You cannot proceed a trial. And then the other set of plaintiffs, the court said, you violated Rule 26. You did not provide timely evidence of your damages, and therefore you can't present evidence at trial of your damages. Later on, the defendant files a motion to dismiss a summary judgment motion, and the court grants it. And on appeal, what this court did was with respect to the first category of plaintiffs, it said, yes, death penalty sanctions, the higher standard applies. But with respect to the plaintiffs who couldn't put on evidence of damages, because that's an express sanction under Rule 37 when you don't provide it timely, the court said the lesser standard applies. And the court went through each of those four factors, this court, and found there was no abuse of discretion there. Now, I want to back up for one minute in terms of the standard that applies, and I think it's really important here. The plaintiffs didn't just fail to object to the standard that the district court applied. They expressly asked for it. They filed a response to our motion to exclude, and this is on page 2070 of the record, and they say the motion to exclude asserts a Rule 26 violation. If a Rule 26 violation is alleged, the court must perform an analysis and focus on four factors, and those are the four factors that the court applied. In their opposition, they say the same thing. At the hearing, the September 2, 2022 hearing for the district court, their counsel got up and argued the same exact four factors. They asked for this test to apply. The court agreed the test applied. They lost under it, and now they're asking for you to redo something and apply a new standard. Do you believe that there's evidence in this record that the clients are responsible for the failure, the time delay, as opposed to just the lawyers? Your Honor, the standard, as my friend said earlier, it's bad faith or willfulness, and yes, I think that willfulness of the plaintiffs is met. When we had the opportunity to depose them, we asked them time and again, what are your damages? Tell us your damages. And they say, I can't. I'm waiting on documents. Discovery closes. There's no motion to compel. They get no new documents. And then when we file our motion to exclude because Rule 26 wasn't followed, they come up with this astronomical number of damages they're entitled to. And here's the kicker. The number that they come up with, it's based on documents from successions and judgments of possession from the 1980s and the 1990s, decades ago. There is absolutely no explanation. And the district court expressly found this as to why they couldn't have provided these documents sooner. You know, they want to now say, well, the defendants hid documents from us, and that's simply not the case. The record evidence is not there. And it's shown by the documents that they even cite in their brief. You know, they point the court to an affidavit from their prior counsel. But if you look at that affidavit, and it's at page 903 of the record, it specifically says the defendants have no objection to the banks producing records of the trust and the successions. The defendants gave them everything they asked for. They also point to a letter from Whitney Bank. And in that letter, this is at 928 and 929 of the record, it talks about all the prior search efforts they made, all the documents they previously provided to plaintiffs. It even says in that letter, we were given authority. We were given authority by the defendants to produce to you everything we can with respect to the trust and the successions. They had it all before them. They didn't need anything else to come up with this astronomical damages model. They waited too long. The discovery deadline had passed. And the court did not abuse its discretion in finding that the evidence of damages should be excluded. And, Your Honor, in the standard that he applied, there's four factors to consider. He considered every single one of them. He found there was no good explanation for the delay. He found that damages were important. All there were reasons for them to be provided timely. He found there's a lot of prejudice to the defendants in this case. And that couldn't be truer. When we asked for the depositions. Counsel, you've said several times that you've asked them, well, what are your damages, and you've never got an answer to that. You're asking what are the damages. That seems to assume that you know what the claim is. What was the claim? That's right. The claims, Your Honor, were that the defendants allegedly took property out of the Wars King Trust. It's a secret trust. And diverted it to some secret trust and diverted it to themselves somehow. What is the value? What is the evidence? What do you allege that we actually diverted to the secret trust? What do you allege belonged in your successions and now no longer does? And we somehow took it and ended up in the defendant's pockets. Tell us that and give us the value. That's what you have to do. I've seen the trust has records. Show them up with the flow of monies. That's absolutely right. And the trust gave them records every single year. The plaintiffs got an accounting of what was in the trust, what was out of the trust that year, and then when they asked for more information, they received that as well. Everything has been given to them. Your Honor, if I could get back to you. I'm sorry. Can we move on? Of course. I'm trying to figure out if there are any other fact issues. About Bill King's authority to vote stock, is there a fact issue? Because it looks like he had specific permission, and then you have to go to the unanimous consent form. But Lillian says that she didn't actually sign that. So is there a fact issue on that declaratory judgment point? Your Honor, no, there's not a fact issue. Help. Help. Explain. So Lillian King now denies she signed the unanimous consent form. She also denies that she attended meetings in which her name was written on there. Even if you accept all of that is true, it does not matter. It is immaterial. Every single meeting of the trust, if you look at the minutes, it specifically ratifies Bill King's authority to vote the trust stock for the prior years, and it authorizes him to vote at the future meetings of any corporation in which the trust owns stock. But that's only as to specific shares of stock, not of blanket power. That's the problem. That is true, Your Honor. That ratification is satisfactory. In the trust document itself, it doesn't prescribe a form, that there has to be this one form in which we authorize Bill King to vote the trust shares. It doesn't say that. What it says is you have one person that you elect to vote the trust shares, and that's what they did. Every single meeting, they sat down and they said, Bill King, we're going to give you the authority to vote the trust shares that they own in the stock. There was no other votes. There was no other votes that they're now complaining about. And, Your Honor, specifically with respect to the unanimous consent, that really dealt with one transaction. It dealt with the Halcyon transaction. With respect to that transaction, it made the trust a lot of money. At the time, and Lillian King says this in her deposition, she had no objection to that going forward. In fact, she owned her own shares in the stock, and she cashed them in. And the shares that the trust owned, they were minority shares. So even if Bill King was unauthorized to do this or voted no, it wouldn't have mattered. The transaction would have fallen through anyway. But back to the declaratory judgment, and this is also worth noting, a declaratory judgment action, it goes before the court. It's not a jury trial. But even regardless of that, the judge did not make a credibility determination because regardless of whether she signed the unanimous consent or not, she gave her consent. She authorized Bill King to engage in all these transactions, and she now says she wants to reverse because they're void. What about prescriptions? Yes. So, Your Honor, if you say that the accountings were good for the prescription, those accountings wouldn't contain the information on the allegedly illegal acts, and so how would they trigger the prescription period under In Re Royal Alice Properties? Yes. Your Honors, they don't have to. This is a preemptive period, not a prescriptive period. The statute is very clear it is preemptive. The statute also is very clear that it says the preemptive period of three years begins to run from an accounting in which the act or omission is rendered. And, in fact, if you look at the case Wright v. Lawson, it's a Second Circuit case at a Louisiana state court. It had the exact same claims that the plaintiffs are alleging here. It alleged fraud, breach of fiduciary duty, intentional wrongdoing. It alleged that assets were diverted from the trust without the plaintiff's knowledge. It also alleged that the defendants deliberately withheld info from the trust, information from the trust. And the court still found that this statute, LARS 92234, provides a preemptive period that nonetheless applies. It does not have to be disclosed on the accounting. And, Your Honor, you had asked earlier, didn't the court also figure that these claims had prescribed anyway? And the answer is yes. That's why a lesser sanction would have been futile here. We have deadlines. There's prejudice to the defendants. One of the defendants passed away weeks after giving his deposition. The other one suffered a stroke. Having a continuance would have done nothing. So should we say that the substantial rights are not affected by the allegedly improper death penalty sanctions because they would have lost anyway on the prescriptive period? They would have been futile anyway. They would have been futile anyway. Under like prong three if we're doing plain error like we do in criminal law a lot. First, I'd like to say I think the standard is even higher than plain error. I think they invited the error by actually asking the court to apply this standard. But, Your Honors, even if you get there, we don't think that you should reverse the motion in limine. But if you do, the motion for summary judgment should still be granted. And that's because claims three through six fail based on correction with respect to the trust claims. Now, opposing counsel brought up the succession claims. It's very clear, and these are in the record in our motion for summary judgment, each plaintiff filed a waiver in 1998 in Louisiana State Court of any and all claims related to the successions and for formal accounting of the successions. That in and of itself gets rid of the accounting claim as the successions and claims three through six related to the successions. Your Honors, respectfully, unless the court has any other questions, I'll cede my time and respectfully request that the decisions be affirmed in their entirety. Thank you, Ms. Gonski. Thank you. Mr. Fagan for rebuttal. I'm going to try to quickly reference some things. So the affidavit of Ms. Hanson that I referenced starts at the record 2237. And that definitively says that William King and Alvin King seized, transferred, or retitled significant monies and assets, some of which my sisters and I could not value, all of which belong to the succession of Charles Sterling King, their father, to the trust and other locations. So it's not strictly the trust. I think that the court's question about, well, what is this case about? And what is the nature of the cause of action? That's what the Louisiana courts focus on for statutes of limitations. So that's why I started out beginning that this is not just an action regarding trust because there are other facts that are pled. So the court, and I'm going to give the court a cite because this is not in our briefing, but it's axiomatic, the Louisiana Supreme Court's held that it's axiomatic that a termination of the proper prescriptive period to be applied in a case depends on the nature of the cause of action asserted. It's the Boutte case, 759, Southern 2nd, 45. The cite's on page 48. The significance of that is that Louisiana defines the cause of action as operative facts. Well, the operative facts are different with respect to the trust. Not only the trust, and I think that when you look at the scope of the statute that the appellees rely on, 9, 2234, Part A is about accounting. Part B is about a different aspect, and Part D is a catch-all. So Part B, these ones that are about accounting, they're trying to expand this beyond the scope to if you literally interpret Section D, it's all actions. So if the trustee gets in a car accident, it's all actions. I think it's absurd to read 2234 as broadly as the appellees want the court to read. It has to look at the nature of the cause of action. So there are different statutes of limitations that are applicable with respect to the succession issues, for instance, to the property that they inherited and what was done with that and the disposition of that, and that's in our briefs too. So, again, quickly, the waiver. If you look at the waiver, Louisiana law on successions says that the succession representative may do a final accounting, and the legatees or heirs may request a final accounting, in which case the court may order it. That's what this waiver is about. It's not a broad waiver of everything. Waivers in Louisiana are very narrowly construed and can't be extended beyond the scope. The laws will settle about that on remission of obligations. So they didn't give us everything. They didn't give the appellees, did not give my clients everything. They were still asking for documents. They explained that the death of Alvin King, that Bill King's incapacity due to a stroke, the inability to get records that were complete, these were all problems that interfered with their ability to come up with the damages, but nonetheless they did. Now, they may make fun of it, but nonetheless, it's in an affidavit. They obviously put time. There's a five-page supplemental declaration, summary, excuse me, disclosure that itemizes numerous damages that are verified by Ms. Hansen's affidavit. That's a material fact about those damages. The other part is the more cite, it's ironic to me that they cite more versus Sipkos, in that case apply the Conner factors. So I don't know why I would be supportive of their position on that. That more versus Sipko requires the extra steps that we've been discussing earlier. And the courts, the ones that the district court applied were the ones based on the CQ Inc. case, which are not a death penalty case. And, you know, should, it goes back to the court's, Judge Elrod's question, should this have been something that should have been raised by the attorney for the appellants while you're using the CQ Inc. standard instead of the death penalty standard? Well, yes, but that was not done. And it's a question about whether that should be considered by the court under the circumstances presented here. You know, another time has expired. Thank you. Thank you for your time. Your case and all of today's cases are under submission and the court is in recess.